# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

CARLA ALLISON-STACY,            )
                                )
        Plaintiff,          )
                                )
v.                              )    Case No. CIV-10-473-JHP-SPS
                                )
MICHAEL J. ASTRUE,              )
Commissioner of the Social      )
Security Administration,        )
                                )
        Defendant.         )

## REPORT AND RECOMMENDAITON

The claimant Carla Allison-Stacy requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the decision of the Commissioner should be REVERSED and the cased REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot,

considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: 1) whether the decision was supported by substantial evidence, and 2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on October 1, 1975, and was thirty-four years old at the time of the applicable administrative hearing. (Tr. 32, 128). She has a GED, and has worked as a children's institution attendant. (Tr. 45, 150). The claimant alleges she has been unable to work since October 19, 2007, due to status epilepticus, cerebral vasculitis, subacute bacterial endocarditis, bipolar disorder, anemia, phlebitis, hypoalbuminemia. (Tr. 144).

## Procedural History

On April 10, 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income ("SSI") payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Michael Kirkpatrick conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated May 5, 2010 (Tr. 12-23). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but could only perform simple, unskilled tasks that do not require

interaction with the general public. (Tr. 17). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there were jobs that she could perform, *i. e.*, housekeeping cleaner, bakery racker, and hand bander. (Tr. 2-23).

**Review**

The claimant contends that the ALJ erred: (i) by failing to find her endocarditis, headaches, and arthralgias to be a severe impairment; (ii) by failing to properly assess her RFC; and (iii) by failing to identify jobs that reflected all of her physical limitations. The undersigned Magistrate Judge finds the claimant's second contention persuasive for the following reasons.

The medical evidence reveals that the claimant had the severe impairments of bipolar disorder, NOS; dysthymia, early onset; social anxiety; history of polysubstance abuse of methamphetamine in remission two years; and alcohol abuse in remission two years. (Tr. 14). As for the relevant medical evidence, the claimant was hospitalized in August 2004 and October 2004 for endocarditis, and she also experienced seizures during the October episode. (Tr. 258-271). Physician's Assistant Dean Anderson treated the claimant at an outpatient clinic. In April 2008, he treated her for fatigue and constipation, and recommended that she start an exercise routine and add more fiber and water to her diet. The next month, Anderson treated the claimant for tension and stress. The claimant reported that she had recently lost a job opportunity due to past felonies, was buying a home with her boyfriend but he had been arrested the previous week, and was having

money problems with buying gas and feeding her family. At the same appointment, the claimant denied sleeping difficulties or fatigue. (Tr. 412-413).

Dr. Theresa Horton conducted a comprehensive diagnostic interview and mental status examination on June 11, 2008. Dr. Horton diagnosed the claimant with bipolar disorder, NOS; dysthymia; social anxiety; history of polysubstance abuse in remission two years; status epilepticus; cerebral vasculitis; subacute bacterial endocarditis; anemia; phlebitis; and hypoalbumineamia. Dr. Horton's assessment stated that the claimant was "cognitively capable of understanding, remembering and managing simple instructions and tasks while adjusting and adapting socially and emotionally in occupational settings," but noted that the claimant "complain[ed] of chronic fatigue and weakness that likely will interfere with her pace over time, as well as her ability to sustain successfully for periods over 4 hours per day." (Tr. 520).

At the administrative hearing, the claimant testified that she has pain in her neck, wrists, hands, back, and down into her thighs, and that she takes pain relievers for these ailments but that they do not entirely ease her pain. (Tr. 34-35). She stated that she sleeps ten hours a night and has to lie down two to three hours during the day, and estimates that she sits on her couch with her feet up approximately ten hours a day. (Tr. 36-37). Additionally, the claimant testified that her husband has to help her brush her hair, but that she sees the to the rest of her personal needs; that she does not engage in social activities or go out because she gets panic attacks; and that she avoids her children's school activities. (Tr. 37-39). She further testified that she has to take antibiotics almost every month to prevent a recurrence of her endocarditis, and that her

osteoarthritis causes much of her physical pain. (Tr. 39-42). As to her physical abilities, she stated that she thought she could stand ten or fifteen minutes, that she could not lift much more than the weight of a can of green beans, and that she could not bend over, squat, rise from a squat, or climb, and that her hands also frequently cramp. (Tr. 42-45).

In his written opinion, the ALJ adopted Dr. Horton's assessment of the claimant's mental RFC, but rejected her assessment of the claimant's physical limitations. The ALJ explained this inconsistent treatment by speculating that Dr. Horton based the physical limitations solely upon the claimant's subjective complaints of fatigue and weakness and noting that the claimant had denied any fatigue (but not weakness) the previous month. (Tr. 20). But under the circumstances, the ALJ should have re-contacted Dr. Horton for an explanation of her basis for imposing physical limitations on the claimant's ability to perform work activities, *see* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."), particularly when assigning great weight to the portion of Dr. Horton's opinion that supported a finding of disability but rejecting the portion that did not. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984).

Because the ALJ failed to properly analyze the opinion of Dr. Horton, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

**Conclusion**

In summary, the undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 9th day of March, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma